UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEFAN GERNETH and AMY AUSTRA-GERNETH,<br><br>Plaintiffs,<br><br>v.<br><br>EAST UNION TOWNSHIP, et al.<br><br>Defendants. | CIVIL ACTION NO. 3:25-CV-00815<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Before the Court is a motion containing a request for a preliminary injunction, filed by Stefan Gerneth ("Gerneth") and Amy Austra-Gerneth ("Austra-Gerneth") (collectively "Plaintiffs") on May 8, 2025. (Doc. 3). Along with their motion, Plaintiffs filed a brief in support. (Doc. 3-1). This case stems from Plaintiffs' recording of a public meeting on May 5, 2025, and the actions of Defendants East Union Township (the "Township") and Donald G. Karpowich ("Karpowich") (collectively, "Defendants") in response thereto. (Doc. 1). Instantly, Plaintiffs request that this Court temporarily restrain and enjoin Defendants from prohibiting audio recordings before and after public meetings.[1] (Doc. 1, at 8, Doc. 3-1, at 16-

---

[1] This matter was first before the Court on Plaintiffs' emergency motion for a temporary restraining order and preliminary injunction. (Doc. 3; Doc 7). Initially, Plaintiffs sought relief related not only to Defendants' prohibition on Plaintiffs' recording public meetings but also to Karpowich's related decision to commence a criminal prosecution of Austra-Gerneth for her actions recording the meeting. (Doc. 1, at 8; Doc. 3-1, at 16-17; Doc. 7, at 2-3). Plaintiffs had also requested that this Court temporarily restrain and enjoin Defendants from commencing a criminal action under the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. § 5701, et seq. ("WESCA") against Plaintiffs. The Court cannot enjoin Defendants from commencing a criminal prosecution related to WESCA. (Doc. 1, at 8; Doc. 3-1, at 16-17; Doc. 7, at 2-3). It is beyond cavil that "'[a]bsent a showing of bad faith or an intent to harass, federal courts should decline requests to enjoin state criminal prosecutions.'" *McLean v. Clark*, No. CV 3:19-0667, 2019 WL 5722006, at *2 (M.D. Pa. Nov. 5, 2019) (quoting *Gonzalez v. Waterfront Comm'n of New York Harbor*, 755 F.3d 176,

17). For the following reasons, Plaintiffs' motion for a preliminary injunction will be **GRANTED**. (Doc. 3).

I. FACTUAL AND PROCEDURAL BACKGROUND

The following background is taken from the complaint and for the purposes of the instant motion, is taken as true. (Doc. 1). The Township is governed by a three-member Board of Supervisors ("the Board"). (Doc. 1, ¶ 10). The Board exercises legislative, executive, and quasi-judicial powers. (Doc. 1, ¶ 10). At the time of this filing, the members of the Board are Kyle Mummey ("Mummey"), Wendy Danchision ("Danchision"), and Jill Careyva ("Careyva"). (Doc. 1, ¶ 11). Mummey serves as the Board's Chairperson. (Doc. 1, ¶ 11).

The Board holds regular public meetings at a public building located at 10 East Elm Street in Sheppton, PA ("Township Building"). (Doc. 1, ¶¶ 12-13). These public meetings serve as a forum to discuss, deliberate, and enact official actions affecting the Township. (Doc. 1, ¶ 13). The meetings are advertised and open to the public. (Doc. 1, ¶ 13). The Board has the authority to appoint a "township solicitor as a non-voting officer who serves at the pleasure of the Board, [] who 'shall direct and control the legal matters of the township.'" (Doc. 1, ¶ 15). Part of the duties of the township solicitor include directing the East Union Township Police Department ("Police Department") to commence criminal actions for any offenses occurring in the Township or on public property owned by the Township. (Doc. 1, ¶ 15). Karpowich is the current Township Solicitor. (Doc. 1, ¶ 16).

---

180 (3d Cir. 2014) (citing *Younger v. Harris*, 401 U.S. 37, 43 (1971))). Plaintiffs' have not made a showing of bad faith here, and as such, a federal court enjoining a state prosecution would be inappropriate. (Doc. 3-1). At the hearing on this matter, the parties agreed that the sole remaining issue is whether Defendants may prohibit audio recordings before and immediately after public meetings. Therefore, to the extent that Plaintiffs continue to request any relief from this Court regarding their criminal prosecution, Plaintiffs' motion will be **DENIED** in this respect. (Doc. 3).

Plaintiffs are husband and wife and reside in the Township. (Doc. 1, ¶ 1). At the time of this filing, both Gerneth and Mummey are Republican candidates for Township Supervisor. (Doc. 1, ¶ 17). Both of their names appeared on the primary ballot for the election scheduled for May 20, 2025. (Doc. 1, ¶ 17). Austra-Gerneth is a volunteer for her husband's campaign. (Doc. 1, ¶ 18). The Board approved a solar farm development plan submitted by Austra-Gerneth and a Delaware Corporation. (Doc. 1, ¶ 20). In order to create a campaign issue that Gerneth is financially interested in the office of Township Supervisor, Mummey purposefully delayed signing approval of the solar development plan. (Doc. 1, ¶ 21).

On Monday May 5, 2025, the Board held its meeting at the Township Building. (Doc. 1, ¶ 22). Plaintiffs attended the meeting, along with Karpowich and other members of the public. (Doc. 1, ¶ 22). During the meeting, Gerneth held an audio recorder and recorded it in its entirety. (Doc. 1, ¶ 23). At the end of the meeting, Gerneth handed the audio recorder to Austra-Gerneth, and asked her to continue recording, which she did for approximately 10 minutes after the meeting adjourned. (Doc. 1, ¶¶ 24-25). During this time, Karpowich observed Austra-Gerneth holding the audio recorder while it was still recording. (Doc. 1, ¶ 26). He approached and informed her that she was violating WESCA. (Doc. 1, ¶ 26). Karpowich subsequently asked Austra-Gerneth to turn off the audio recorder, and she complied. (Doc. 1, ¶ 26). Karpowich then directed the Police Department to commence a criminal action against Austra-Gerneth for violations of WESCA. (Doc. 1, ¶¶ 27-30). On May 6, 2025, the Police Department obtained a search warrant for the audio recorder, and Plaintiffs surrendered the audio recorder that same day. (Doc. 1, ¶ 31).

On May 8, 2025, Plaintiffs filed a complaint requesting declaratory and injunctive relief. (Doc. 1). In their complaint, Plaintiffs ask this Court to declare that the First

Amendment protects Plaintiffs' right to create audio and visual recordings of public meetings in the Township Building when it is not being used as a polling station, as well as enjoin Defendants from prohibiting creation of such audio or visual recordings and enjoin Defendants from prosecuting Plaintiffs for their actions recording the meeting. (Doc. 1, at 8). Plaintiffs filed an emergency motion for a temporary restraining order ("TRO") and preliminary injunction, along with a brief in support, on the same day they filed their complaint, May 8, 2025. (Doc. 3; Doc. 3-1).

This Court denied Plaintiffs' emergency request for a TRO on May 12, 2025. (Doc. 7). On May 19, 2025, the Court held a hearing to address Plaintiffs' motion for a preliminary injunction,[2] during which the parties agreed that the only issue remaining before this Court is whether the First Amendment protects Plaintiffs' right to create audio recordings of a public meeting room before and after public meetings. On May 22, 2025, Karpowich submitted his brief in opposition to Plaintiffs' motion. (Doc. 17). On May 23, 2025, the Township submitted its brief in opposition to Plaintiffs' motion. (Doc. 18). On May 23, 2025, Plaintiffs submitted a reply brief addressing both briefs in opposition. (Doc. 19). The motion is now ripe for disposition.

## II.   PRELIMINARY INJUNCTION STANDARD

Four factors govern a district court's decision in issuing a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether

---

[2] While Plaintiffs request either a permanent or preliminary injunction in their papers, the majority of their briefing and the entirety of the evidentiary hearing on this matter was argued under the preliminary injunction standard. (Doc. 3; Doc. 3-1; Doc. 19). Indeed, Defendants' responsive papers interpret Plaintiffs' motion to be a request for a preliminary injunction. (Doc. 17; Doc. 18). As such, this Court construes Plaintiffs' motion to be that for a preliminary injunction and will review under the relevant preliminary injunction standard.

the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. *Grill v. Aversa*, 908 F. Supp. 2d 573, 591 (M.D. Pa. 2012); *Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994); *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1254 (3d Cir. 1985)); see also *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 170–71 (3d Cir. 2001).

A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. Such relief is extraordinary in nature and should issue in only limited circumstances. *See Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426–27 (3d Cir. 1994). In order to satisfy this exacting standard, the party moving for a preliminary injunction must carry its burden of demonstrating both: (1) likelihood of success on the merits; and (2) the existence of irreparable injury from the alleged misconduct. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797 (3d Cir.1989). If the movant fails to carry this burden on these two elements, the motion should be denied since a party seeking such relief must "demonstrate both a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir.1989) (emphasis in original) (*quoting Morton v. Beyer*, 822 F.2d 364 (3d Cir.1987)). Further, given the extraordinary nature of this form of relief, a motion for preliminary injunction places precise burdens on the moving party.

As a threshold matter, it is a movant's burden to show that the "preliminary injunction must be the only way of protecting the plaintiff from harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir.1992) (emphasis in original, citations omitted). Therefore, "upon an application for a preliminary injunction to doubt is to deny." *Madison Square Garden Corp.*

5

*v. Braddock*, 90 F.2d 924, 927 (3d Cir.1937). A preliminary injunction "may not be used simply to eliminate a possibility of a remote future injury." *Holiday Inns of Am., Inc. v. B&B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969). "[T]he irreparable harm must be actual and imminent, not merely speculative." *Angstadt ex rel. Angstadt v. Midd-West Sch.*, 182 F. Supp. 2d 435, 437 (M.D. Pa. 2002). "[M]ore than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat . . . .'" *Continental Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (citations omitted). "A preliminary injunction cannot be issued based on past harm. The purpose of a preliminary injunction is to prevent *future* irreparable harm." *Fisher v. Goord*, 981 F. Supp. 140, 168 (W.D.N.Y. 1997) (emphasis in original). Thus, the relevant inquiry is whether the party moving for injunctive relief is in danger of suffering irreparable harm at the time the preliminary injunction is to be issued.

Moreover, "[t]he 'requisite feared injury or harm must be irreparable—not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.'" *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (quoting *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the *only* way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (emphasis added). "The word irreparable connotes 'that which cannot be repaired, retrieved, put down again, atoned for ...'." *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir.1994) (citations omitted). If the record does not support a finding of both

6

irreparable injury and a likelihood of success on the merits, then a preliminary injunction cannot be granted. *Marxe v. Jackson*, 833 F.2d 1121 (3d Cir.1987).

**III.   DISCUSSION**

    **A.**    LIKELIHOOD OF SUCCESS ON THE MERITS

To establish a reasonable probability of success on the merits, a movant must produce sufficient evidence to satisfy the essential elements of the underlying cause of action. *Punnett v. Carter*, 621 F.2d 578, 582-83 (3d Cir. 1980). The district court must examine the legal principles controlling the claim and the potential defenses available to the opposing party. *See BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 264 (3d Cir. 2000). A mere possibility that the claim might be defeated does not preclude a finding of probable success if the evidence clearly satisfies the essential prerequisites of the cause of action. *Highmark*, 276 F.3d at 173 (stating "on an application for preliminary injunction, the plaintiff need only prove a *prima facie* case, not a certainty that he or she will win"). However, in First Amendment cases, the Third Circuit has noted that " 'the government bears the burden of proof on the ultimate question of a statute's constitutionality [and] plaintiffs must be deemed likely to prevail for the purpose of considering a preliminary injunction unless the government has shown that plaintiffs' proposed less restrictive alternatives are less effective than the statute.'" *Reilly v. City of Harrisburg*, 858 F.3d 173, 180 (3d Cir. 2017) (quoting *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004)). In determining the likelihood of success on the merits in a First Amendment case, the plaintiff bears the initial burden of showing that their speech has been restricted by government action or statute. *See Reilly*, 858 F.3d at 180 n.5. If the plaintiff can show that, "the burden shifts to the government to 'justify its restriction on speech under whatever level of scrutiny is appropriate[,]' either intermediate or strict scrutiny." *Bitler v.*

*Robeson Twp.,* No. 5:24-CV-2177, 2024 WL 3540985, at *2 (E.D. Pa. July 25, 2024) (quoting *Reilly*, 858 F.3d at 180 n.5).

Plaintiffs claim Defendants violated their First Amendment right to make audio recordings in a public meeting room immediately before and immediately after the meeting adjourns, arguing that it is a matter of established law that creating audio recordings is conduct protected by the First Amendment. (Doc. 1, at 8; Doc. 3-1, at 4). Because of this, Plaintiffs provide that, "Defendants must prove their actions serve a compelling governmental interest, are narrowly tailored to that interest, and are the least restrictive means of serving the interest." (Doc. 3-1, at 12). In making their arguments, Plaintiffs rely heavily on *Bitler v. Robeson Township*, a case in which the Eastern District of Pennsylvania preliminarily enjoined a township from enforcing a resolution which inhibited the public's ability to record and livestream public meetings. (Doc. 3-1, at 9); 5:24-CV-2177, 2024 WL 3540985, at *2 (E.D. Pa. July 25, 2024). Defendants argue that *Bitler* is non-precedential, wrongly decided, and distinguishable from the present case. (Doc. 17, at 6-10; Doc. 18, at 10-11).

"The First Amendment protects actual photos, videos, and recordings, and for this protection to have meaning the Amendment must also protect the act of creating that material." *Fields v. City of Philadelphia*, 862 F.3d 353, 358 (3d Cir. 2017). Federal courts generally agree that the First Amendment protects not just speech itself, but the act of creating speech by recording or taping it. *See Fields*, 862 F.3d at 358; *see also Am. C.L. Union of Illinois v. Alvarez*, 679 F.3d 583, 596 (7th Cir. 2012) (stating "[r]estricting the use of an audio or audiovisual recording device suppresses speech just as effectively as restricting the dissemination of the resulting recording[. . .] there is no fixed First Amendment line between the act of creating speech and the speech itself[.]"); *see also Anderson v. City of Hermosa Beach,*

8

621 F.3d 1051, 1061–62 (9th Cir.2010) (noting that the First Amendment protects creating speech and stating "we have not attempted to disconnect the end product from the act of creation"). Additionally, "although the First Amendment 'does not carry with it the unrestrained right to gather information[,]'" courts have emphasized the importance of maintaining First Amendment protections in the context of news and public gatherings. *Bitler*, 2024 WL 3540985, at *2 (quoting *PG Publ. Co. v. Aichele*, 705 F.3d 91, 98-99 (3d Cir. 2013)) (explaining that recording public meetings is "akin to news gathering or creation of a public record for dissemination, certainly implicating the First Amendment, and restriction of this recording is a form of speech suppression.").

Defendants are correct in that the *Bitler* decision is not binding on this court. However, the logic and precedent under which that case was decided is applicable here. As in *Bitler*, Plaintiffs seek to record immediately before and immediately after municipal meetings which are open to the public and where the public and governmental officials debate policy. (Doc. 1; Doc. 3-1, at 12); 2024 WL 3540985, at *1 (stating "[t]his case is about a Resolution adopted by vote of the Robeson Township Board of Supervisors, which, inter alia, restricts the audio recording of Board gatherings before, after, and during recesses of public meetings"). In *Bitler*, the Eastern District of Pennsylvania concluded "[r]ecording the events of these meetings [ ] is akin to news gathering or creation of a public record for dissemination, certainly implicating the First Amendment" because the "recordings take place in a public building and the subject of the recordings are public meetings, open for anyone to attend."[3] 2024 WL 3540985, at *2.

---

[3] The Court is also not persuaded by Defendants' argument that Plaintiffs failed to properly notify meeting attendees of recordings, as the evidence in the record, particularly the parties' discussion at oral argument, shows that it is undisputed that Plaintiffs held the recording device in plain view. (Doc. 17, at 7-8; Doc. 18, at 10-11). Further, as this matter focuses solely on a pending preliminary injunction, all the Court must consider is prospective

9

This conclusion is consistent with the Third Circuit's logic in *Fields v. City of Philadelphia*. 862 F.3d 353 (3d Cir. 2017). As explained in *Bitler*, recordings taken before and after public meetings are created in public places where the public is present and able to observe. 2024 WL 3540985, at *3. Recordings created before and after the meetings may "promote the access that fosters free discussion of governmental actions[.]"*Fields*, 862 F.3d at 362. Further, these recordings are akin to the news gathering which the Supreme Court has concluded falls under the protection of the First Amendment. *See Houchins v. KQED, Inc.*, 438 U.S. 1, 11, 98 S. Ct. 2588, 2594 (1978) (stating "[t]here is an undoubted right to gather news 'from any source by means within the law'" (quoting *Branzburg v. Hayes*, 408 U.S. 665, 682 (1972)); *see also Wolfson v. Lewis*, 924 F. Supp. 1413, 1417 (E.D. Pa. 1996) (stating "[i]mplicit in the right to publish the news is the right to gather the news.").

Having found that for the purposes of this preliminary injunction analysis, recording before and after a public meeting implicates the First Amendment, the burden then shifts to Defendants to justify its restriction on speech, based on the appropriate level of scrutiny. *See Reilly*, 858 F.3d at 180; *see also Bitler*, 2024 WL 3540985, at *3. Here, the Court need not determine the precise level of scrutiny appropriate, as the specific "First Amendment standards[. . .] —whether based on content-neutral restrictions, public right of access, prior restraints, or otherwise—remain in flux at this early stage of the proceedings[.]" *Bitler*, 2024 WL 3540985, at *2 n.3. Thus, the Court finds that Plaintiffs have shown a likelihood of success on the merits sufficient for their requested declaratory relief.

---

relief, or whether, in the future, Plaintiffs' right to record before and after public meetings is protected by the First Amendment when other attendees are properly on notice of the recording device. *See Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 252 (3d Cir. 2002) (noting that when only a preliminary injunction is at stake, the court is limited to providing prospective relief).

10

B.     IRREPARABLE HARM

"This Circuit recognizes that the violation of a fundamental right, such as one's First Amendment freedoms, 'for even minimal periods of time unquestionably constitutes irreparable injury.'" *Stilp v. Contino*, 743 F. Supp. 2d 460, 466 (M.D. Pa. 2010) (quoting *Swartzwelder v. McNeilly*, 297 F.3d 228, 241 (3d Cir. 2002))). Because the Court finds Plaintiffs' have a likelihood of success on the merits for their First Amendment claim, this element necessarily weighs in favoring of granting Plaintiffs' the injunctive relief they seek. *Stilp*, 743 F. Supp. 2d at 466. Plaintiffs were threatened with, and actually faced, criminal prosecution under WESCA for creating audio or audiovisual recordings of before, after, and during the Meeting. (Doc. 1, ¶¶ 26-31). Thus, Plaintiffs have properly shown that they suffered a deprivation of First Amendment freedoms and may continue to do so if they choose to continue to make recordings before and after the public meetings. The Court therefore finds that Plaintiffs have shown irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (finding that a deprivation of First Amendment freedoms, even a minimal one, constitutes irreparable harm).

C.     REMAINING PRELIMINARY INJUNCTION FACTORS

The Court now looks to the remaining preliminary injunction factors; whether granting preliminary relief will result in even greater harm to the nonmoving party and whether that the public interest favors such relief." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). "[I]f a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994). Here, both factors weigh in favor of granting Plaintiffs' motion. Absent legitimate,

countervailing concerns, public interest favors the protection of constitutional rights. *See Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 332 (3d Cir. 2020) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Further, Defendants have failed to put forward any compelling argument that they will suffer great harm if Plaintiffs' motion were to be granted. This considered, the Court finds all the preliminary injunction factors weigh in favor of granting Plaintiffs' motion.

IV. CONCLUSION

Based on the foregoing, Plaintiffs' motion for a preliminary injunction (Doc. 3) is **GRANTED.** An appropriate order will follow.

Dated: July 3, 2025

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**